IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| **RONALD MEALEY** | * |
| 2056 Phillips Mill Road | * |
| Forrest Hill, Maryland 21056 | *     Civil No. _____ |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| **BALTIMORE CITY POLICE** | * |
| **DEPARTMENT** | * |
| 601 E. Fayette Street | * |
| Baltimore, Maryland 21202 | * |
| | * |
| *Serve on:* | * |
| Lisa Walden, Esquire | * |
| Chief of the Office of Legal Affairs | * |
| 100 N. Holiday Street, Suite 101 | * |
| Baltimore, Maryland 21202 | * |
| | * |
| **MAYOR AND CITY COUNCIL** | * |
| **OF BALTIMORE CITY** | * |
| 100 North Holiday Street | * |
| Baltimore, Maryland 21202 | * |
| | * |
| *Serve on:* | * |
| James L. Shea, Esquire | * |
| City Solicitor | * |
| 100 North Holiday Street | * |
| Baltimore, Maryland 21202 | * |
| | * |
| **KURT ROEPCKE**, Sergeant | * |
| in his individual and official capacity | * |
| Baltimore City Police Department | * |
| c/o 601 E. Fayette Street | * |
| Baltimore, Maryland 21202 | * |
| | * |
| **JOHN WEBB**, Major | * |
| in his individual and official capacity | * |
| Baltimore City Police Department | * |
| c/o 601 E. Fayette Street | * |
| Baltimore, Maryland 21202 | * |
| | * |
| Defendants | * |

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

<u>**COMPLAINT AND REQUEST FOR JURY TRIAL**</u>

COMES NOW, Plaintiff, Ronald Mealey, by and through his attorneys, Jo Anna Schmidt and the law firm of Schmidt, Dailey & O'Neill, LLC, and brings this Complaint for Damages and Request for Jury Trial against Defendants, the Baltimore City Police Department, Mayor and City Council of Baltimore City, Sergeant Kurt Roepcke and Major John Webb, for illegal retaliation in violation of his First Amendment Rights, 42 U.S.C. § 1983, Article 40 of the Maryland Declaration of Rights, as well as state law claims of defamation, slander, and false light and, as grounds therefore, states the following:

## I.   JURISDICTION, VENUE AND PARTIES

1.     Plaintiff, Ronald Mealey (hereinafter "Officer Mealey"), resides at 2056 Phillips Mill Road, Forrest Hill, Maryland 21050.

2.     On July 21, 2021, Officer Mealey provided notice of his claims to the Baltimore City Solicitor pursuant to Md. Code Ann. Cts. & Jud. Proc. § 5-304.  **Ex. 1.**

3.     At all times material hereto, the Defendant, Mayor and City Council of Baltimore City (hereinafter "the City"), is a body corporate as established by Article I, Section 1 of the Charter of Baltimore City and is the elected legislative body vested with the law-making power of Baltimore City under Md. Const. Art. XI. The City, as a chartered county established under Md. Ann. Code Art. 25A, is a person or entity *sui Juris* organized under the laws of Maryland over whom this Court may exercise personal jurisdiction.

4.     At all times material hereto, the Defendant, Baltimore City Police Department (hereinafter "BPD"), was and is an agency of the State of Maryland, but otherwise a local government under Md. Code. Ann., Cts. & Jud. Proc. § 5-301(ad)(21) and is subject to suit under 42 U.S.C. § 1983.

2

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

5.      Defendant, Sergeant Kurt Roepcke (hereinafter "Sgt. Roepcke"), is a Maryland resident and is currently employed by the BPD.  Sgt. Roepcke has been employed by the BPD since July 1995.  At all times material hereto, he was a Sergeant within the Special Operations Section and since July 5, 2020, he has been the Administrative Sergeant for the BPD Bomb Squad. At all times material hereto, Sgt. Roepcke was acting in his capacity as an agent, servant, and employee of the BPD and was acting under the direction and control of the BPD and pursuant to either official policy or the custom, practice, and usage of the BPD.  Sgt. Roepcke is being sued in his individual and official capacities.

6.      Defendant, Major John Webb (hereinafter "Major Webb"), is a Maryland resident and is currently employed by the BPD.  Defendant Webb has been employed by the BPD since July 1995.  At all times material hereto, he was the commanding officer of the Special Operations Section and acting in his capacity as an agent, servant, and employee of the BPD.  Further, at all times material hereto, Defendant Webb was acting under the direction and control of the BPD and pursuant to either official policy or the custom, practice, and usage of the BPD.  Defendant Webb is being sued in his individual and official capacities.

7.      At all times material hereto, the BPD was acting individually and by and through its actual or apparent agents, servants, and employees, including, but not limited to, Major Webb and Sgt. Roepcke, who were acting within the normal scope of their employment.

8.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332.

9.      Venue is proper pursuant to 28 U.S.C. § 1391.

## II. FACTS AND ALLEGATIONS COMMON TO ALL COUNTS

10.     At all times material hereto, Officer Mealey was a police officer employed by the BPD.

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

11.     Officer Mealey was hired by the BPD on June 3, 2002, and, since October 2019, he has been the BPD Bomb Squad Commander ("BSC").

12.     In February 2019, Officer Mealey, as a matter of public concern, met with Deputy Inspector General Gerald D'Angelo as part of the Baltimore City Office of Inspector General's ("OIG") investigation into fraud, waste, and abuse by Sgt. Roepcke and the BDP's Marine Unit and Underwater Recovery/Dive Team during the removal of a sunken vessel in the inner harbor known as the *Danger Zone* (OIG Case No. 19-0027-I).  Between February 2019 and July 2019, when the OIG issued their report, Officer Mealey provided substantive information and documentation to the OIG for OIG Case No. 19-0027-I.

13.     On July 10, 2019, the OIG issued their Report in OIG Case No. 19-0027-I, finding *inter alia* that:

    a.  Poor communication within the BPD's Special Operations Division created conclusion with no clear direction to ensure that the salvage operation was done effectively and efficiently.

    b.  Management within the BPD was aware of the Maryland Department of Natural Resource abandoned boat program but never utilized it.

    c.  Aa a result of the Marine Unit's salvage operation, the boat was completely destroyed.

    d.  BPD failed to issue a citation to the boat owner and the City was held responsible for the cost of the removal, at combined loss to the City of $30,142.25.

    e.  The Marine Unit's salvage of the boat was ill conceived at its inception and the Marine Unit lacked the necessary equipment and skills to efficiently conduct the operation.

4

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

f.  The salvage operation was done in an unsafe manner, the tactics employed or considered during the operation created the potential for physical harm to officers, civilian personnel, and damage to City property.

g.  The tactics included the use of two separate police boats to tow/dislodge the boat from pilings, the use of a BPD utility truck to dislodge the boat from shore, and the consideration by Sgt. Roepcke to use explosives to aid in the salvage operation.

h.  BPD personnel, including Sgt. Roepcke, provided contradictory statements to various entities, including senior BPD management, BPD Internal Affairs (IA), and/or OIG investigators, such that the OIG could not determine who provided the authority for the Marine Unit to remove the boat.

14.  Officer Mealey and others within the Bomb Squad told OIG investigators that Sgt. Roepcke asked to use detonation cord in the *Danger Zone* salvage operation, despite the fact that he was not qualified to use explosives.

15.  Following the OIG's July 10, 2019 report, BPD Commissioner Harrison referred the matter to the Public Integrity Bureau ("PIB") for appropriate disciplinary action. Upon information and belief, no disciplinary action was taken against any of the personnel identified in the OIG's report as the PIB had already determined to clear Sgt. Roepcke of wrongdoing despite evidence to the contrary.

16.  On July 22, 2019, following the issuance of the OIG report, Sgt. Roepcke and/or others on his behalf, filed a complaint against Officer Mealey and the Bomb Squad members in retaliation for providing information to OIG investigators (IA Case No. 2019-1311). The complaint alleged

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

> Good Evening,
>
> My Husband Said That One of His Friends Told Him How The Bomb
> Squad Shows Up Late, Go Home Early and No One Checks Up on
> Them. They Use Their Training Days as Half Days or to Run Errands.
> If the Bpd is So Short Why is This Unit a Full Time Unit when It Used
> to Be a Part Time Unit.

The charges were determined to be "Unfounded" on June 15, 2020.

17.     On August 1, 2019, following the issuance of the OIG report, Sgt. Roepcke filed a complaint against Officer Mealey and the Bomb Squad members in retaliation for providing information to OIG investigators (IA Case No. 2019-1823). The complaint alleged "That Officers of the Bomb Squad Are Not Working Their Full Shifts." The charges were determined to be "Unfounded" on June 24, 2020.

18.     In or about June 2020, the Baltimore City Council voted to defund the BPD Marine Unit, which left Sgt. Roepcke without an assignment.

19.     On July 5, 2020, Sgt. Roepcke was made the Administrative Sergeant for the Bomb Squad.

20.     Sgt. Roepcke is not a certified Bomb Technician and has never attended the FBI's Hazardous Devices School ("HDS"). [1] Since 2017, Sgt. Roepcke has desired to attend the HDS. However, the BSC at the time, Sgt. Todd Ring, refused Sgt. Roepcke's request. Thereafter, Sgt. Roepcke asked his wife, an FBI Special Agent, for help to gain admittance to the school, but that effort was also unsuccessful. Sgt. Roepcke then had former BPD Commissioner Kevin Davis sign his HDS application, but the application was rejected because it was not signed by Sgt. Ring.

21.     Once Sgt. Roepcke was put in the position of overseeing the Bomb Squad, he again attempted to apply to attend the HDS. In order to do so, Sgt. Roepcke needed to be "nominated"

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

by someone within the BPD **and** his application had to be signed off by Officer Mealey, as the BSC. Sgt. Roepcke had Captain Joseph Jones endorse his application and Major Webb ordered Officer Mealey to sign the application as the BSC.

22.     According to the National Guidelines for Bomb Squads established by the National Bomb Squad Commanders Advisory Board, Officer Mealey is required to follow criteria set forth in Section 3 of the National Guidelines. Those criteria establish that certain types of people, such as those who do not exercise good judgment and decision making, should ***not*** be selected as a candidate for Bomb School. Given Officer Mealey's history with Sgt. Roepcke and the OIG's determination that called into question Sgt. Roepcke's decision-making abilities and veracity, Officer Mealey believed that Sgt. Roepcke was ***not*** a suitable candidate for Bomb School. However, Officer Mealey was ordered to sign Sgt. Roepcke's HDS application. Major Webb threatened Officer Mealey with "picking a district" if he did not sign the application, which was a direct threat to transfer him out of the Bomb Squad and remove him as the BSC. Accordingly, and under duress, Officer Mealey signed Sgt. Roepcke's HDS application.

23.     Thereafter, Officer Mealey, as a matter of public concern, contacted the local FBI coordinator to find out how he should proceed, given his reservations about Sgt. Roepcke's lack of suitability for Bomb School. He was advised to contact Sgt. John Adamek[2] at the National Bomb Squad Commanders Advisory Board, which he did. Sgt. Adamek told Officer Mealey to put his thoughts together in writing and he would forward it to the appropriate personnel. In addition, Sgt. Adamek explained that he was already familiar with Sgt. Roepcke since he had received a number of inquiries regarding Sgt. Roepcke's application.

---

[1] The FBI's Hazardous Devices School trains all of the United States public safety bomb technicians at the federal, state, and local level.
[2] Sgt. Adamek is employed by the City of St. Paul, Minneapolis.

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

24.     Officer Mealey, as a matter of public concern, sent a letter to Sgt. Adamek, identifying his concerns regarding the eligibility of Sgt. Roepcke to become a Bomb Technician:

- April 2017, Sgt. Roepcke attempted to go around the chain of command and applied for HDS. He used a favor and got Commissioner Davis to sign his application. At that time, (prior to me becoming BSC), he tells me personally that his wife, FBI Special Agent Susan Roepcke, has spoken to her boss SAIC Lou Luciano and that he will make sure he gets into an HDS class right away and that he will use a spot that is normally saved for two military EOD Techs. He wanted the Bomb Tech certification to be able to join the local UHDT[3] team headed up by Maryland State Fire Marshall Bill Potts. He filled out his application and had the Commissioner of the Department sign the application. He sent it without going through or asking the Bomb Squad Commander Sgt. Todd Ring. I have attached a copy of an administrative report written by Sgt. Ring regarding the situation. Sgt. Kurt Roepcke was aware that he was going around the proper process because I attempted to advise him during the situation.

- OIG report case #19-0027-I dated July 10, 2019.
  This report encompasses several issues that would make Sgt. Roepcke ineligible to become a Bomb Technician. This report should be requested by anyone who conducts a background investigation pertaining to Sgt. Roepcke becoming a Tech. The original report was investigated and written by Inspector Jerry D'Angelo. The report has a 6-page synopsis that was released to the general public. (See attached). The actual report was 20 pages and was submitted to Inspector General Cummings. That report was redacted to 9 or 11 pages by someone other than Inspector D'Angelo. Mr. D'Angelo is no longer with the Office of the OIG for Baltimore City. Please contact him directly and I am certain he can shed light on the totality of the investigation. Topics in the report include asking the bomb squad for "det cord" to cut pilings under a sunken vessel to free it from its position. This happened twice during the salvage operation, and improperly using the procurement system to obtain a hydraulic powered underwater chainsaw. The report covers several other fraudulent issues as well.

- July 2019 Letter of Intent for lawsuit filed by Bomb Tech Diver T. Ryan. Sgt. Roepcke created a hostile work environment for Tech Ryan by trying to sabotage the UHDT program. Please see letters by Tech Ryan to John Adamek.

- July 2020.

---

[3] Underwater Hazardous Devices Team.

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

In July 2020, Sgt. Roepcke is placed into the Bomb Squad as the Sergeant. I am ordered to send him to HDS. The BPD had already begun a process to select a Bomb Tech. and we had several candidates to be suit tested, aptitude tested and interviewed. Due to Covid and protesting, we did not complete the process. We also had another opening for an administrative Sergeant in which 10 or so Sergeants applied for. We also had a senior Sergeant in the Tactical section who had asked to be laterally moved from his position as the K9 training Sgt. He was denied even though he has experience working with the Bomb Squad and has experience with explosives. The previous three Sergeants within the bomb squad were all placed there with a lateral move. I was ordered by our Command Staff to send Sgt. Roepcke to HDS without adhering to any of the National Guidelines, STB 2013-1 Guidelines for selecting bomb squad personnel or the Bomb Squad Commanders Handbook. Please see attached email chain.

- Synopsis

    In addition to the above incidents, as the Bomb Squad Commander I would not choose Sgt. Roepcke as a Bomb tech candidate. His questionable choices and acts, as well as his demeanor and disposition would be some of the reasons I would not choose him over other candidates.

25.     Officer Mealey's letter also provided the identity and telephone numbers of witnesses in support of his statements.

26.     On or about September 2, 2020, Sgt. Roepcke received a letter from the FBI terminating his HDS application in light of the National Guidelines for Bomb Technicians (2020) under Guideline Section 4.4.[4] The FBI stated,

---

[4] Section 4.4 Criminal and Behavioral Issues:

4.4.1     Information that is developed through background criminal history checks or other means will be further evaluated by the FBI to determine applicant's suitability for acceptance to the HDS. Listed below are specific criteria that will automatically constitute grounds for rejection:

.....

- Credible evidence that the applicant has engaged in inappropriate, violent, unsafe, or threatening behavior that may impact his or her fitness to be entrusted with explosive, hazardous materials, and/or sensitive information on explosive devices.

....

9

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

An examination of the Office of the Inspector General, City of Baltimore (OIG Case # 19-0027—i) report – as well as Police Commissioner Harrison's subsequent referral for disciplinary action – provide credible evidence that your department has concluded your actions implicate serious questionable judgment and that additional oversight of the Marine Unit is now required.

In addition, and in contradiction of the applicant's representation, both the former Baltimore City Bomb Squad Commander and the current Baltimore City Bomb Squad Commander (i.e., Officer Mealey), have recently notified NBSCAB that they decline to endorse your application to HDS. The lack of such endorsement, alone, would serve to terminate your application. However, HDS has also received notice that the Maryland State Police, Office of the Fire Marshall Bomb Squad, Underwater Hazardous Devices Team, Team Leader has declined to endorse your application.

Consistent, calculated, and proper judgment in a high stress environment, in addition to an unwavering adherence to law enforcement sensitive techniques, tactics, and procedures, as well as respect for chain-of-command and safety protocols, is essential in the field of explosives-related critical incident responses. Therefore, based on all the information available for review, and in consultation with both the FBI's Office of General Counsel and NBSCAB, I find that termination of your application is appropriate.

27.     On September 14, 2020, Officer Mealey provided a copy of the FBI's letter to Major Webb.

28.     On October 5, 2020, Sgt. Roepcke sent a Form 95 complaint to Major Webb regarding Officer Mealey. In the complaint, Sgt. Roepcke *inter alia* defamed Officer Mealey, stating that Officer Mealey did not follow departmental policies or chain of command and

---

4.4.3     The FBI reserves the right of final refusal of any applicant's suitability to attend the HDS based on the totality of circumstances provided.

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

neglected departmental policies and procedures concerning Officer Thomas Ryan's[5] training. Sgt. Roepcke stated that his report was,

> being relayed to my command via official channels, for an in immediate consideration of changing the Bomb Squad Commander and to appointment an officer that will represent the Baltimore Police Department in a more suitable and professional manner. I am also requesting that an investigation into any possible violations of departmental policies, to include a possible false report / statements made by Officer Mealey in his letter to the FBI. I believe Officer Mealey's actions were not made in the best interest of the Baltimore Police Department; rather were made based on his own personal interest. His actions are disgraceful and work against the Baltimore Police Department's ability to work with outside agencies and show his lack of ability to follow his chain of command and department policies and procedures.

29.     Sgt. Roepcke's October 5, 2020 complaint against Officer Mealey was in direct retaliation for Officer Mealey exercising his First Amendment rights and raising a matter of public concerning regarding Sgt. Roepcke's suitability to be a candidate for the HDS.

30.     On October 7, 2020, Officer Mealey wrote a 95 report to Major Webb, advising that Sgt. Roepcke was targeting and harassing him in retaliation for speaking out on a matter of public concern; *i.e.,* his refusal to endorse him for HDS.

31.     On October 28, 2020, Sgt. Roepcke submitted an appeal to the HDS' suitability determination and submitted documents.

32.     On October 30, 2020, the FBI issued their final determination regarding Sgt. Roepcke's HDS suitability. The FBI wrote,

> You requested and received, redacted copies of the documents submitted to the HDS with regard to your 2020 application. However, and as was apparent from the initial suitability determination letter, the HDS did not rely upon the full extent of those documents. Put simply, the HDS does not consider alleged motive, bias, ill-will, or personnel

---

[5] Officer Ryan is an FBI Maritime Bomb Tech Diver and is the only BPD officer who is part of the FBI's Maryland-Delaware National Capital Region (NCR) Underwater Hazardous Devices (UHD) Team.

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

conflicts to be 'credible evidence.' The HDS' decision was based solely on whether: 1) your HDS application was properly endorsed; and 2) the findings of the Office of the Inspector General, City of Baltimore (OIG Case # 19-0027-I) report (hereinafter 'City OIG Report').

On October 28, 2020, you submitted an appeal to the HDS' suitability determination and concomitantly provided documents via electronic mail; those documents were forwarded to NBSCAB. In reviewing your submission, the HDS has again set aside any documents involving personal approvals or disapprovals. After setting those documents aside, it remains undisputed that your HDS application is not properly endorsed by the current Bomb Squad Commander (BSC). While Mr. Mealey may be your subordinate, he remains a qualified BSC and, as such, is an individual the HDS recognizes as having the authority to endorse your application.

****

In other words, a non-HDS certified bomb technician may not nominate or endorse an applicant for HDS admission irrespective of internal department chains of command. Mr. Mealey withdrew his endorsement of your 2020 application and the appellate documents do not indicate a reinstatement of that endorsement. As stated in the September 2, 2020 letter, and reiterated herein, "[t]he lack of such endorsement, alone, would serve to terminate your application."

Turning to the City's OIG report, the HDS' September 2, 2020 letter stated that "there was credible evidence that your document has concluded your actions implicate questionable judgment and that additional oversight of the Marine Unit is now required." It remains undisputed that the City of Baltimore Office report found this salvage operation involved questionable judgment, that contradictory statements were provided to the City's OIG, and that additional oversight of the Marine Unit was instituted by your department.

***

I have again consulted with the FBI's Office of General Counsel and NBSCAB, and I again find that termination of your application is appropriate. This decision is based solely on the full text of the documents referenced herein. Acknowledging that attendance at HDS is not required under any law, your HDS suitability determination is final, this matter is deemed closed, and the denial to attend HDS is permanent.

33.     On November 17, 2020, Sgt. Roepcke sent another 95 complaint to Major Webb concerning Officer Mealey, asking that he be removed as the BSC.     This complaint was in

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

retaliation for Officer Mealey exercising his First Amendment rights and making statements of public concern about Sgt. Roepcke's unsuitability for HDS.

34.   On November 25, 2020, Officer Mealey advised Major Webb of the HDS appeal decision for Sgt. Roepcke.

35.   In December 2020, Officer Mealey met with Detective Collins of the PIB and expressed his concern that Sgt. Roepcke was likely to institute departmental charges against him in retaliation over his statements to Sgt. Adamek and the denial of Sgt. Roepcke's HDS application.   Officer Mealey provided Det. Collins with the names and contact information for witnesses that could corroborate the matters of public concern relayed to Sgt. Adamek.

36.   On January 5, 2021, Officer Mealey was notified that he was the subject of an Internal Affairs charge (PIB No. 2020-0974) and the nature of the investigation involves, amongst other things, the following:

> *This investigation will encompass your actions and the circumstances surrounding Sergeant Kurt Roepcke's application to Hazardous Device School (HDS) from July of 2020 until present.  It was alleged that you undermined Sergeant Roepcke's authority by not approving his application to Hazardous Device School.*

37.   On February 17, 2021, Sgt. Roepcke filed departmental charges against Officer Mealey (PIB No. 2021-0227).  Sgt. Roepcke alleged,

> On Tuesday, February 8th, 2021, Officer Ron Mealey sent an email requesting to switch his assigned shifts (0700 x 1500), with Officer Michael Lavery's 1500 x 2300 for Monday, February 15th, 2021 in the Tactical Section's Bomb Squad.  Upon learning of this request, I responded to the email on February 9th to both members and Lt. Klein, a 95 requesting to switch their assigned shifts.  I never received a form 95 / Administrative Report in reference to either Officer requesting to switch shifts with one another, however, it has come to my attention that they did in fact switch shifts that day.
>
> Furthermore, on February 4th, 2021, during Bomb Squad training both I and the Lieutenant advised the squad that after checking with

13

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

Sergeant Mac Donald of the FOP, that if two officers wanted to switch shifts they would have to write a 95 and sign it and have it approved by their immediate supervisor. I learned on Wednesday, February 17th, 2021 that Officers Lavery and Mealey again switched their assigned work shifts (0700 x 1500 / 1500 x 2300) in the Tactical Section's Bomb Squad without notifying me at all (verbally or in an Administrative report as previously requested).

38. On or about February 22, 2021, Officer Mealey was notified by Internal Affairs of PIB No. 2021-0227. The Notification stated:

> It is alleged on February 15th and 17th 2021, Officer Ronald Mealey switched his assigned shifts with Officer Michael Lavery without proper notifications to his superior after being instructed to do so.

39. On July 21, 2021, Officer Mealey was notified that the charges in PIB No. 2021-0227 were sustained, and as a result, he was being suspended without pay for 16 days. Officer Mealey has challenged the findings and the disciplinary action by requesting a Trial Board. Officer Mealey has no prior disciplinary action and neither he nor Officer Lavery left the shift unmanned.

40. To date, no decision has been issued related Sgt. Roepcke's charges against Officer Mealey in PIB No. 2020-0974.

41. On April 1, 2021, Officer Mealey was charged by Sgt. Roepcke for an incident that occurred on/about March 12, 2021 (IA No. 2021-0431), stating,

> On March 9th, 2021 I sent an email to Officer Mealey telling him that I need a training schedule for the month of March 2021. He was previously told that both me and Lt. Klein need the monthly training schedule like SWAT and other units within SOS. I had previously ordered him to submit all training operations 48 hours prior which Officer Mealey failed to do. On March 16th at Bomb training (X-ray systems updates) I and Lt. Klein also reminded Officer Mealey that he needs to give me the training schedule. Lt. Klein said that he saw it but that Officer Mealey did not give it to him. Officer Mealey stated that he would get it to me. This was due to me Tuesday, March 11, 2021. I reminded him again on March 16, 2021.

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

Today, April 1st, 2021 I still have not received the training schedule, nor have I received a new training schedule for April since March has passed. This is a failure to follow direct orders. This order is to ensure a safe training environment and all necessary training is completed and to the standard. This failure has continued to erode the confidence in his ability to manage operations as Bomb Squat *(sic)* Commander.

This charge was determined to be "Unfounded" on June 11, 2021.

42. All departmental charges and/or 95 complaint reports by Sgt. Roepcke and/or on his behalf against Officer Mealey have been in retaliation for Officer Mealey engaging in his First Amendment rights related to (a) his participation in the OIG investigation and/or (b) his objections to Sgt. Roepcke's HDS application.

43. At the time that Sgt. Roepcke was engaging in his wrongful and harassing acts against Officer Mealey, he was aware that Officer Mealey had provided information to Sgt. Adamek. Sgt. Roepcke was also aware that Officer Mealey had worked with and provided information to the OIG regarding their investigation into his actions during the *Danger Zone* operation and other matters of fraud, waste, and abuse. Sgt. Roepcke's acts are retaliatory and in direct violation of Officer Mealey's First Amendment rights, as well as the BPD's Whistleblower Protection Policy No. 1792.

44. Likewise, the City, the BPD, by and through its Command Staff, including but not limited to Major Webb, have violated Officer Mealey's First Amendment Protections and continue to allow Sgt. Roepcke to take improper retaliatory actions. Officer Mealey disclosed to Major Webb that he was the source of information or "deep throat" for the OIG's investigation.

45. At all times relevant, the City and the BPD have an anti-retaliation/whistleblower policy (BPD Policy 1729) that provides an affirmative duty to report misconduct, intervene to

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

prevent or stop misconduct, and to strictly prohibit retaliation against or interference with a BPD member for any reason, to those who report or seek to report violations of law or BPD policy.

46.     Despite having an anti-retaliation/whistleblower policy, the City and BPD have an official policy or custom of unfettered retaliation against whistleblowers and/or officers that exercise their First Amendment Rights. *See e.g., Jeffry E. Taylor v. Baltimore Police Dep't.,* Civil No. 1:18-Cv-03999-SAG (D. Md.).

47.     The City and BPD's failure to properly implement, train and/or supervise its employees as to BPD Policy 1729  has inflicted harm on Officer Mealey.

48.     Sgt. Roepcke has defamed, slandered and/or portrayed Officer Mealey in false light and exposed him to public scorn, hatred, contempt and/or ridicule.

49.     Sgt. Roepcke and Major Webb's conduct in this matter has been intentional, reckless, extreme and/or outrageous.

50.     Defendants' improper acts have caused Officer Mealey stress and emotional distress on and off duty, as well as economic damages.

**COUNT I**
**FIRST AMENDMENT RETALIATION – FREEDOM OF SPEECH**
**42 U.S.C. § 1983**
**(All Defendants)**

Officer Mealey incorporates by reference and re-alleges the allegations contained in the preceding paragraphs, as if fully set forth below.

51.     Officer Mealey had knowledge of the existence of facts relating to the fraud, misuse, and abuse of BPD manpower, resources, and equipment and improper acts allegedly committed by Sgt. Roepcke and the Marine Unit.

52.     Although it was not part of or pursuant to Officer Mealey's official duties, as a concerned citizen, he provided statements, information, and documentation to assist the OIG's

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

investigation into the fraud, misuse and abuse of BPD manpower, resources, and equipment and improper acts committed by Sgt. Roepcke and the Marine Unit in OIG Case #19-0027-I.

53.     Although it was not part of or pursuant to Officer Mealey's official duties, as a concerned citizen, Officer Mealey has been a material witness in the case of *Jeffry E. Taylor v. Baltimore City Police Dep't., et al.,* Civil No. 1:18-Cv-03999-SAG (D. Md.).

54.     Although it was not part of or pursuant to Officer Mealey's official duties, as a concerned citizen, Officer Mealey provided information and his opinion as to Sgt. Roepcke's suitability as an HDS candidate.

55.     Officer Mealey's speech and his actions in (a) participating in the OIG's investigation; (b) being a material witness against Sgt. Roepcke in the *Taylor* matter; and (c) communicating with Sgt. Ademek as to Sgt. Roepcke's unsuitability for HDS are all protected expressions regarding matters of public concern.

56.     As a result of Officer Mealey engaging in his First Amendment rights, he was unjustifiably subjected to retaliation, harassment, threats, and intolerable and hostile work conditions, including but not necessarily limited to,

> (a) being charged departmentally by Sgt. Roepcke in PIB/IA Case Nos. 2019-1311, 2019-1823, 2020-0974, 2021-0227, and 2021-0431;
>
> (b) Being suspended from work, without pay, for 16 days as a result of Sgt. Roepcke's retaliatory charging practice;
>
> (c) Sgt. Roepcke's numerous 95 complaints to Major Webb and/or others regarding Officer Mealey, including the request to immediately replace him as the BSC;
>
> (d) being threatened with removal from the Bomb Squad and as the BSC by Major Webb if he failed to endorse Sgt. Roepcke's HDS application;

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

57.     The harassment and retaliation and other harms inflicted upon Officer Mealey for engaging in his First Amendment rights results from an official policy or custom of the City and the BPD.  The City and BPD inadequately implements, trains and/or supervises BPD commanders or other managing personnel, including but not limited to Sgt. Roepcke and/or Major Webb, in adhering to and/or enforcing BPD Policy No. 1729.

58.     As a result of the harassment and retaliation and other harms inflicted upon Officer Mealey by the Defendants, he has experienced economic and non-economic damages, including but not limited to, loss of pay, pain, suffering, humiliation, reputational damages, stress, depression, and anxiety.

59.     Officer Mealey's asserts that his interest in First Amendment expression outweighs whatever interest the Defendants had regarding maintaining control over the workplace.

60.     Officer Mealey asserts that he was unjustifiably charged by Sgt. Roepcke and/or other supervisory members of the BPD, and investigated by PIB/IA in retaliation for exercising his First Amendment Rights.

61.     Officer Mealey asserts that a causal relationship exists between his protected expressions on matters of public concern and the adverse employment actions.

62.     These actions complained of herein violate Officer Mealey's right to free speech under the First Amendment of the U.S. Constitution.

WHEREFORE, Officer Mealey prays for Judgment:

(a) Issuing an award to compensate for all other non-economic damages incurred by Officer Mealey, including but not limited to, the humiliation, stress, mental anguish, embarrassment, and loss of enjoyment of life suffered in an amount no less than $800,000.00;

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

(b) Alternatively, if compensatory damages are not awarded, issuing an award of nominal damages;

(c) Awarding Officer Mealey's costs and reasonable attorney's fees in this action;

(d) Granting punitive damages against the individual Defendants and the BPD in the amount of $1,000,000.00; and

(e) Granting such and other further relief as this Court may deem just and proper.

**COUNT II**
**FREEDOM OF SPEECH RETALIATION**
**Maryland Declaration of Rights, Article 40**
**(All Defendants)**

Officer Mealey incorporates by reference and re-alleges the allegations contained in the preceding paragraphs, as if fully set forth below.

63.    Officer Mealey states that the actions previously complained of herein also violate his right of freedom of speech and expression, as protected by the Maryland Declaration of Rights, Article 40.

WHEREFORE, Officer Mealey prays for Judgment:

(a) Issuing an award to compensate for all other non-economic damages incurred by Officer Mealey, including but not limited to, the humiliation, stress, mental anguish, embarrassment, and loss of enjoyment of life suffered in an amount no less than $800,000.00;

(b) Alternatively, if compensatory damages are not awarded, issuing an award of nominal damages;

(c) Awarding Officer Mealey his costs and reasonable attorney's fees in this action;

(d) Granting punitive damages in the amount of $1,000,000.00; and

(e) Granting such and other further relief as this Court may deem just and proper.

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

## COUNT III
### WRONGFUL EMPLOYMENT PRACTICES
#### (All Defendants)

Officer Mealey incorporates by reference and re-alleges the allegations contained in the preceding paragraphs, as if fully set forth below.

64.     The Maryland Legislature has created a cognizable statutory interest in the ability to report crimes without fear of retaliation in terms of personal or property damage.  Likewise, the BPD strictly prohibits purposeful retaliation against or interference with a member who reports or seeks to report violations of law and/or BPD policy, procedures, or rules.

65.     Officer Mealey states that the actions previously complained of and, in more particularly, those materially and retaliatory adverse employment actions, including but not limited to, the improper and false charges instituted by Sgt. Roepcke and/or others on his behalf, constitute wrongful employment practices in violation of Maryland's and his employer's clear mandate to protect whistleblowers.

66.     Officer Mealey asserts that a causal relationship exists between his protected speech and the adverse personnel actions.

WHEREFORE, Officer Mealey prays for Judgment:

(a) Issuing an award to compensate for all other non-economic damages incurred by Officer Mealey, including but not limited to, the humiliation, stress, mental anguish, embarrassment, and loss of enjoyment of life suffered in an amount no less than $800,000.00;

(b) Alternatively, if compensatory damages are not awarded, issuing an award of nominal damages;

(c) Awarding Officer Mealey his costs and reasonable attorney's fees in this action;

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

(d) Granting punitive damages in the amount of $1,000,000.00; and

(e) Granting such and other further relief as this Court may deem just and proper.

## COUNT IV
### DEFAMATION/SLANDER/FALSE LIGHT –October 5, 2020
### (Sgt. Roepcke)

Officer Mealey incorporates by reference and re-alleges the allegations contained in the preceding paragraphs, as if fully set forth below.

67.     On October 5, 2020, Sgt. Roepcke sent a Form 95 complaint to Major Webb in which he reported, *inter alia*, that Officer Mealey,

(e) "does not follow Departmental policy or chain of command;"

(f) "misuse[d] the Bomb Squad Commander position and did not follo[w] his chain of command;"

(g) demonstrated a "disgraceful undermining of policies and procedures, as well as command decisions, to affect his own personal agenda;"

(h) "distorted the truth…."

(i) "has neglected Department policies and procedures;"

(j) "his actions are disgraceful and work against the Baltimore Police Department's ability to work with outside agencies and show his lack of ability to follow his chain of command and department policies and procedures."

68.     The statements made in Sgt. Roepcke's Form 95 Complaint about Officer Mealey were false and defamatory and made with actual malice.

69.     The statements made in Sgt. Roepcke's Form 95 Complaint were made to a third person; *i.e.,* Major Webb and Officer Mealey's employer, his employer's agents, servants and/or representatives.

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

70.    The statements exposed Officer Mealey to scorn, hatred, contempt or ridicule, thereby discouraging others in the BPD from having a good opinion of, or associating with, him.

71.    Sgt. Roepcke was legally at fault in making the false, defamatory, and slanderous statements.

72.    As a result of Sgt. Roepcke's false and defamatory statement, Officer Mealey suffered mental distress, anxiety, depression, emotional and reputational harm.

WHEREFORE, Officer Mealey, prays for a judgment in his favor against Sgt. Roepcke for exemplary or punitive damages, economic and non-economic damages in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00), plus interest from the date of the subject occurrence and costs of this suit together with such other and further relief as this Court deems proper.

## COUNT V
### DEFAMATION/SLANDER/FALSE LIGHT –Departmental Charges
### (Sgt. Roepcke)

Officer Mealey incorporates by reference and re-alleges the allegations contained in the preceding paragraphs, as if fully set forth below.

73.    Sgt. Roepcke filed Departmental charges against Officer Mealey, namely PIB/IA Case Nos. 2019-1311 (Charges Unfounded), 2019-1823 (Charges Unfounded), 2020-0974 (No Decision Rendered), and 2021-0227 (Charges Sustained).

74.    The Departmental charges filed by Sgt. Roepcke were false, defamatory, slanderous and made with actual malice.

75.    The statements exposed Officer Mealey to scorn, hatred, contempt or ridicule, thereby discouraging others in the BPD from having a good opinion of, or associating with, him.

76.    The Departmental charges filed by Sgt. Roepcke were made to a third person; *i.e.,* Officer Mealey's employer, his employer's agents, servants and/or representatives.

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

77.     Sgt. Roepcke was legally at fault in making the false and defamatory charges.

78.     As a result of Sgt. Roepcke's false and defamatory charges, Officer Mealey suffered mental distress, anxiety, depression, emotional and reputational harm.

WHEREFORE, Officer Mealey, prays for a judgment in his favor against Sgt. Roepcke for exemplary or punitive damages, economic and non-economic damages in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00), plus interest from the date of the subject occurrence and costs of this suit together with such other and further relief as this Court deems proper.

Jo Anna Schmidt, Esquire (Bar #10155)
Schmidt, Dailey & O'Neill, LLC
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
Phone: (410) 783-1296
Fax: (410) 783-1316
jschmidt@sdolaw.com
*Attorney for Plaintiff, Ronald Mealey*

## DEMAND FOR JURY TRIAL

The Plaintiff, Ronald Mealey, by and through undersigned counsel, hereby demands a jury trial as to all issues triable by a jury.

Jo Anna Schmidt, Esquire (Bar #10155)
Schmidt, Dailey & O'Neill, LLC
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
Phone: (410) 783-1296
Fax: (410) 783-1316
jschmidt@sdolaw.com
*Attorneys for Plaintiff, Ronald Mealey*

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296